**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| HARRY BRETT TAYLOR, | : | HABEAS CORPUS |
|    Petitioner, | : | 28 U.S.C. § 2254 |
| | : | |
| v. | : | |
| | : | |
| AMIEE SMITH, Warden Dooly State | : | CIVIL ACTION NO. |
| Prison, | : | 1:19-CV-1546-CAP-CMS |
|    Respondent. | : | |

## <u>UNITED STATES MAGISTRATE JUDGE'S</u><br><u>FINAL REPORT AND RECOMMENDATION</u>

Petitioner, Harry Bett Taylor, proceeding with counsel, challenges via 28 U.S.C. § 2254 the constitutionality of his December 2014 Gwinnett County convictions. The matter is before the Court on the petition and brief in support [Docs. 1, 1-2], Respondent's answer response and brief in support [Docs. 5, 5-1],[1] Petitioner's reply [Doc. 9], and Petitioner's supplemental brief in support of his petition [Doc. 17].[2] For the reasons stated below, the undersigned recommends that

---

[1] The petition and brief in support are referred to collectively as the petition, and the response and brief in support are referred to collectively as the response.

[2] Petitioner states that he filed the "supplemental brief . . . due to the Petitioner's receiving a copy of the transcript of [his] motion for a plea in bar." [Doc.

the petition and a certificate of appealability be denied and that this action be dismissed.

## I.    <u>Background</u>

"On January 7, 2009, a Gwinnett County grand jury indicted [Petitioner] for 32 sex crimes against 17 different children." <u>Taylor v. State</u>, 303 Ga. 57, 58, 810 S.E.2d 113, 115 (2018), <u>cert. denied</u>, _ U.S. _, 139 S. Ct. 81 (2018); [Doc. 6-1 at 39-49]. In December 2014, Petitioner was found guilty on thirty-one counts, six counts of aggravated child molestation, eleven counts of child molestation, eleven counts of sexual exploitation of children, one count of aggravated sexual battery, one count of sexual battery, and one count of criminal attempt. [Doc. 6-1 at 35-37]. Petitioner received a total sentence of two life terms plus ten years of imprisonment. [<u>Id.</u> at 37].

---

17 at 1]. Significantly, Petitioner, who attended the September 6, 2012 hearing on the plea in bar and was aware of the testimony at that hearing, *in his petition already cited to the transcript of that hearing and testimony therein*. [<u>See</u> Doc. 1 at 8-9; Doc. 1-2 at 2]. Respondent has filed his response, to which Petitioner has replied. Federal habeas rules allow for a petition, response, and reply. Petitioner, who is counseled, did not move to amend. The rules do not provide for any additional filing by Petitioner or provide a means for Respondent to respond to an improper attempt to supplement the initial petition. Accordingly, the supplemental brief is disregarded.

Petitioner appealed, and on November 2, 2015, the Georgia Court of Appeals remanded to the trial court for reconsideration of the trial court's order that denied Petitioner's speedy trial plea in bar.  See Taylor v. State, 338 Ga. App. 804, 804 n.1, 792 S.E.2d 101, 104 n.1 (2016), aff'd, 303 Ga. 57, 810 S.E.2d 113 (2018).  On December 10, 2015, the trial court issued an amended order denying Petitioner's speedy trial plea in bar.  [Doc. 6-2 at 100-13].  On October 11, 2016, on appeal after remand, the Georgia Court of Appeals affirmed the judgment against Petitioner. Taylor, 338 Ga. App. at 816, 792 S.E.2d at 111.  On February 5, 2018, the Supreme Court of Georgia affirmed.  Taylor, 303 Ga. at 63, 810 S.E.2d at 117.

In his federal petition, Petitioner raises two grounds for relief:  (1) "based on the known deleterious effects of solitary confinement on the human psyche, long-term pretrial solitary confinement, without justification, violates an accused's right to a speedy trial by prejudicing the defense in violation of the Sixth and Fourteenth Amendment" and (2) "the search warrant affidavit does not make an express connection between the evidence sought and the address of the place to be searched, which is a fatal defect and the magistrate cannot infer that such a connection exists and violating the United States Constitution Fourth Amendment."  [Doc. 1 at 11-12].

3

## II.   <u>Federal Habeas Corpus Standard</u>

A federal court may issue a writ of habeas corpus on behalf of a person held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law.  28 U.S.C. § 2254(a).  The opportunity for federal relief, however, is limited.  The Antiterrorism and Effective Death Penalty Act (AEDPA), requires a petitioner to exhaust his state court remedies and requires federal courts to give deference to state court adjudications.  28 U.S.C. § 2254(b)-(e).

Exhaustion requires a petitioner to "fairly present[] every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."  <u>Pope v. Sec'y for Dep't of Corr.</u>, 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting <u>Mason v. Allen</u>, 605 F.3d 1114, 1119 (11th Cir. 2010)) (internal quotation marks omitted).

For claims that have been exhausted, federal relief under the AEDPA is limited to petitioners who demonstrate that the state court adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" 28 U.S.C. § 2254(d)(2).  A

4

state court's factual determinations are presumed correct unless the petitioner presents clear and convincing evidence that those determinations were erroneous. 28 U.S.C. § 2254(e)(1).

"A state court's adjudication is contrary to federal law if it 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" Wellons v. Warden, 695 F.3d 1202, 1206 (11th Cir. 2012) (alterations in original) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). "A state court's adjudication is unreasonable if the state court 'identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (alteration in original) (quoting Williams, 529 U.S. at 413). To show unreasonableness, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1282 (11th Cir. 2016) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)) (internal quotation marks omitted).

5

In sum, the availability of collateral relief is limited, and the habeas petitioner – now presumed guilty, not innocent – bears the burden of demonstrating his or her right to collateral relief.  See Ross v. Moffitt, 417 U.S. 600, 610-11 (1974) (stating that a person once convicted is deemed guilty and "stripped of his presumption of innocence"); Blankenship v. Hall, 542 F.3d 1253, 1274 (11th Cir. 2008) (stating that "in habeas proceedings . . . the petitioner bears the burden of establishing his right to relief").

This Court has reviewed the pleadings and exhibits and finds that the record contains sufficient facts upon which the issues may be resolved.  A federal evidentiary hearing is not required.  See 28 U.S.C. § 2254(e)(2).

## III.   Discussion

### A.   Ground One

#### 1.   Background

Petitioner was arrested and taken into custody on July 24, 2008 and thereafter placed in administrative segregation[3] and, on July 26, 2012, for the first time, filed a

---

[3] The parties stipulated at trial that Petitioner was placed in administrative segregation at some point after his arrest and remained there through November 2014. [Doc. 6-10 at 49].

plea in bar and asserted his right to a speedy trial.  [See Doc. 6-14 at 4, 9; see also Doc. 6-10 at 8]. On September 26, 2012, the trial court denied the plea in bar.  [See Doc. 6-14 at 4].

In December 2014, Petitioner waived his right to a jury trial[4] and proceeded to a bench trial represented by Bernard S. Brody.  [Doc. 6-1 at 158; 6-10 at 1-57]. Petitioner and the state stipulated as to the evidentiary facts in the case.  [Doc. 6-10 at 9-14, 50-57].  The trial court asked Petitioner whether anyone had forced or threatened him into the stipulation, and Petitioner stated, "No." [Id. at 12-13.]  The trial court asked Petitioner if he was acting of his own free well, and Petitioner stated, "Yes." [Id. at 13].  As indicated, the trial court found Petitioner guilty on thirty-one counts.  [Doc. 6-1 at 35-37].

Petitioner appealed and, among other things, argued that his Sixth Amendment right to a speedy trial was violated by the four years he spent in solitary confinement before trial and that the trial court erred in denying his plea in bar.  [See Doc. 6-14 at

---

[4] After assuring that Petitioner understood his right to a jury trial, the trial court asked him whether anyone had coerced or threatened him into waiving his right, and Petitioner stated, "No."  [Doc. 6-10 at 7].

1]. On November 2, 2015, the Georgia Court of Appeals found that the trial court (1) correctly found that the length of delay was presumptively prejudicial and triggered a Barker-Doggett[5] analysis and (2) did not err in finding under the prejudice factor that there was oppressive pretrial incarceration, that Petitioner had not shown unusual anxiety or concern, and that there was no evidence that Petitioner's defense had been impaired. [Doc 6-14 at 9, 20-24]. On review, the appellate court remanded for the trial court to consider the weight of the prejudice factor and to further consider the other factors and their weight. [Id. at 9-26].

On December 10, 2015, the trial court issued an amended order denying Petitioner's speedy trial plea in bar. [Doc. 6-2 at 100-13]. The trial court again found that the delay was presumptively prejudicial and triggered a Barker-Doggett analysis. [Id. at 100]. The trial court (1) found that the length of delay was uncommonly long and weighed it lightly against the state, (2) examined the reasons for delay and weighed them benignly against the state and Petitioner, (3) found that Petitioner's

---

[5] See Doggett v. United States, 505 U.S. 647, 651 (1992) (listing Barker factors for enquiring into speedy trial violation); Barker v. Wingo, 407 U.S. 514, 530 (1972) (listing factors court should access in determining speedy trial violation – "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant").

8

delay in asserting the right weighed heavily against him, and (4) found that prejudice weighed heavily against Petitioner. [Id. at 101-112]. The trial court found specifically on prejudice as follows –

> [T]here is no evidence of any prejudice to [Petitioner] beyond the oppressive pre-trial incarceration. While that first sub-factor weigh[]s against the State, the other two sub-factors must weigh[] against [Petitioner]. When combining the three sub-factors[,] this court holds that the pretrial incarceration, while oppressive, does not carry the day for [Petitioner]. . . . [T]he incarceration did not affect [Petitioner's] ability to communicate with his lawyer, did not prevent him from reviewing the case file, did not prevent him from completing his paralegal course, and did not result in the loss of any evidence[;] therefore the first factor must weigh lightly against the State. The second sub-factor, since there is no evidence that [Petitioner] experienced . . . undue anxiety or concern as a result of his incarceration[,] this factor must weigh heavily against [Petitioner]. Finally, in the third sub-factor, [Petitioner] has presented no evidence to support any conclusion that his case has been impaired by the delay[;] thus, this factor must weigh heavily against [Petitioner] . . . . Based upon the foregoing, the prejudice factor must weigh heavily against [Petitioner].

Taylor, 338 Ga. App. at 811, 792 S.E.2d at 108 (quoting trial court) (alterations other than "Petitioner" in original).

On direct appeal, Petitioner argued that the trial court abused its discretion in failing to weigh the prejudice factor heavily against the state and in concluding that there was no speedy trial violation. Taylor, 338 Ga. App. at 811, 792 S.E.2d at 108. The appellate court disagreed –

9

It is well established that of the three factors considered when determining prejudice to the defendant, harm to the accused's defense is the most serious and important. . . . And while [Petitioner] was placed in solitary confinement, there is no evidence that he was exposed to substandard conditions while incarcerated, such as a lack of adequate food, climate control, proper medical care, or cleanliness. . . . . And as recognized by our Supreme Court, oppressive pretrial detention, standing alone, does not require "an automatic inference of enough prejudice to balance that factor in a defendant's favor without proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment." . . . . Similarly, solitary confinement does not mandate a finding that the prejudice prong of the speedy trial analysis be weighed heavily against the State. . . . Accordingly, we conclude that the trial court did not abuse its discretion with regard to the prejudice factor.

. . .

While we recognize that this was a case involving lengthy solitary confinement before trial, "we must be mindful that no one factor is sufficient to sustain a speedy trial claim" and that the trial court is "required to engage in a difficult and sensitive balancing process of all four factors." . . . Based upon the complexity of the multi-count indictment involving 15 separate victims,[6] [Petitioner's] failure to timely assert his right to a speedy trial, and the lack of any actual prejudice to his defense, we cannot say that the trial court's ultimate conclusion amounts to an abuse of discretion. . . . Additionally, to the extent it could be concluded that the trial court failed to expressly consider presumed prejudice when balancing and weighing the factors, we conclude that a second remand would serve no purpose because even

---

6 Although count seven of the indictment was dismissed before trial, it appears that the remaining counts on which Petitioner was convicted involved crimes against sixteen children. [See Doc. 6-1 at 35-37, 39-49].

10

taking into account the presumed prejudice, the trial court "would have had no discretion to reach a different judgment."

Taylor, 338 Ga. App. at 811-13, 792 S.E.2d at 108-09 (citations omitted).   On February 5, 2018, the Supreme Court of Georgia affirmed.   Taylor, 303 Ga. at 63, 810 S.E.2d at 117.

### 2.   Parties' Arguments

In his first ground, Petitioner contends that "based on the known deleterious effects of solitary confinement on the human psyche, long-term pretrial solitary confinement, without justification, violates an accused's right to a speedy trial by prejudicing the defense in violation of the Sixth and Fourteenth Amendment." [Doc. 1 at 11].   Petitioner argues (1) that his "anxiety and concern . . . was particularly 'undue' because his placement in solitary confinement was never shown to be necessary or justified"; (2) that the pretrial delay of six years in administrative detention caused him despair and anxiety to the extent that it coerced him to stipulate to guilt in a bench trial and prejudiced his defense; (3) that he "stipulated to his guilt in a bench trial[] [i]n order to appeal as well as be transferred to a prison where he could not be held in solitary confinement"; (4) that his "defense was impaired by the

11

diminishment in his ability to assist in his defense";[7] and (5) that the state court unreasonably determined that his defense was not impaired.  [Doc. 1 at 11-12; Doc. 1-2 at 3, 6, 9-10].  Petitioner also cites to research and discussion on that research in case law, which shows generally that isolation causes undue anxiety and concern. [Id. at 4-5].[8]

Respondent argues that ground one fails "as this Court would have to formulate a new rule or recognize a new 'right' in order to grant relief." [Doc. 5 at 2].  Respondent further argues that Petitioner fails to demonstrate that the state court unreasonably found that Petitioner had not shown an impairment to his defense.  [Id. at 6 n.2].

In reply, Petitioner asserts (1) without citation that "the record evidences the prejudice that [Petitioner] suffered" and that the six years of solitary confinement, in

---

[7] In making these assertions on his anxiety and concern and diminished ability, Petitioner cites to no supporting record evidence.  [See Doc. 1-2 at 3, 6, 10].

[8]   Petitioner also discusses the law on unconstitutional conditions of confinement.  [Doc. 1-2 at 6-9].  Generally, conditions of confinement do not go to the validity of a petitioner's convictions, and Petitioner acknowledges that "[t]he speedy trial guarantee was supposed to protect him."  [Id. at 8].

and of itself, establishes both oppressive incarceration and the suffering of anxiety and concern [Doc. 9 at 3-4]; (2) that the state court "failed to consider how the length of the delay creates a presumption of impairment" [id. at 4-5]; (3) that the trial court critically failed to address whether the delay was uncommonly long [id. at 6];[9] and (4) that the state court's finding that Petitioner's pretrial incarceration had been oppressive essentially was a finding that Petitioner suffered prejudice, and it erroneously concluded that Petitioner did not suffer prejudice [id. at 10].[10]

---

[9] The trial court on remand *did* address whether the delay was uncommonly long. [Doc. 6-2 at 101-02]. This matter is not further addressed.

[10] To the extent that Petitioner, who is counseled, raises matters in his reply that do not pertain to his two grounds for relief raised in his petition, those matters are not addressed. Rule 2(b) of the Rules Governing Section 2255 Proceedings dictates that a § 2255 "motion must . . . specify all the grounds for relief available to the moving party[.]" Additionally, Movant did not seek to amend to add any additional grounds, leaving Respondent with no opportunity to respond to an improper attempt to raise a new claim. Accordingly, such matters are not addressed. See Barnes v. United States, 12-60011-CR, 2018 WL 2770171, at *12 (S.D. Fla. Mar. 28, 2018) (declining to consider issues raised for the first time in traverse/reply to response in § 2255 proceedings), report and recommendation adopted, CV 16-62416-CIV, 2018 WL 2770125 (S.D. Fla. June 8, 2018).

### 3.    Law and Recommendation

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial[.]"  To determine whether there has been a constitutional violation, the court applies the Barker four-factor test and weighs (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) actual prejudice to the defendant."  United States v. Oliva, 909 F.3d 1292, 1298 (11th Cir. 2018) (citing Barker, 407 U.S. at 530), cert. denied, _ U.S. _, 139 S. Ct. 1468 (2019).  The first factor involves a double inquiry, the first being whether the delay is a presumptively prejudicial delay which triggers a speedy trial analysis.  Doggett, 505 U.S. at 651-52.  "A post-indictment delay exceeding one year is generally sufficient to trigger the analysis."  Oliva, 909 F.3d at 1298.

"[I]f the first three factors 'weigh heavily against' the Government, the defendant need not show actual prejudice, the fourth factor."  Id. at 1298 (quoting United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir. 2006)).  However, "[i]f . . . the first three factors do not weigh heavily against the government, the defendant generally must demonstrate actual prejudice to succeed on his speedy trial claim."  United States v. Villarreal, 613 F.3d 1344, 1355 (11th Cir. 2010).

14

> We assess the prejudice suffered by the defendant in light of the three interests of the defendant the speedy trial right was intended to protect: (1) "to prevent oppressive pretrial incarceration;" (2) "to minimize anxiety and concern of the accused;" and (3) "to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532 . . . . "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id.

Villarreal, 613 F.3d at 1355.  The "impairment of one's defense is the most difficult form of speedy trial prejudice to prove . . . . Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."  Doggett, 505 U.S. at 655.  However, "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, . . . it is part of the mix of relevant facts, and its importance increases with the length of delay."  Id. at 656.  As stated by the Supreme Court in Doggett, "if the Government had pursued Doggett with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail.  Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as Doggett could not show specific prejudice to his defense."  Id. at 656.  Thus, if the other factors do not weigh heavily against the government, the prisoner must show specific prejudice.  See United States v. Machado, 886 F.3d 1070, 1082

15

(11th Cir. 2018) (requiring defendant to show actual prejudice on impaired defense after five-year delay).

Petitioner's ground one does not challenge or raise any specific argument in regard to the state court's conclusions that the delay was presumptively prejudicial and triggered a speedy trial analysis; that the delay was uncommonly long and weighed lightly against the state; that the reasons for delay weighed benignly against both parties; that the assertion of the right weighed heavily against Petitioner; or, under the prejudice factor, that the pretrial incarceration was oppressive. Petitioner argues only that his lengthy pretrial incarceration in administrative detention was inherently prejudicial such that his speedy trial rights were violated. Petitioner, however, points to no clearly established federal law, United States Supreme Court precedent, to that effect. Further, Petitioner fails to show that the state court unreasonably applied Barker in finding that the prejudice factor weighed against Petitioner.

16

Petitioner sets forth no clear and convincing evidence (presented in the state court)[11] that brings into question the state court's factual finding that Petitioner did not establish that he experienced undue anxiety or concern. See Taylor, 338 Ga. App. at 811, 792 S.E.2d at 108. Neither Petitioner's conclusory assertions in his federal petition and reply in regard to his pretrial mental state, his references to general research on solitary confinement,[12] nor the length of his pretrial incarceration are evidence of Petitioner's mental status during his pretrial confinement. Accordingly, the Court accepts the state court's factual conclusion that Petitioner did not show that he experienced undue anxiety or concern.

Petitioner sets forth no clear and convincing evidence (presented in the state court) that brings into question the state court's finding that Petitioner presented no

---

[11] See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) ("It would be contrary to [the exhaustion requirement] to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively de novo.").

[12] In his petition and reply, Petitioner does not set forth with record citation evidence presented in state court – either evidence on the effects of solitary confinement or evidence on the degree to which the particular administrative segregation experienced by Petitioner was comparable to the solitary confinement discussed in a particular research project.

evidence to support any conclusion that his case has been impaired by the delay.  See

Taylor, 338 Ga. App. at 811, 792 S.E.2d at 108.  Petitioner's current contention that

he was coerced into entering the stipulation on the evidence against him is

affirmatively contradicted by the record.  [See Doc. 6-10 at 9-14].  Accordingly, the

Court accepts the state court's factual conclusion that Petitioner did not show that his

case was impaired by the delay.

In light of the length of delay being weighed lightly against the state, the reason

for delay being weighed benignly against both parties, and the assertion of the right

being weighed heavily against Petitioner, the trial court was not unreasonable in not

presuming an impairment of the defense and requiring a showing of actual prejudice.

See Machado, 886 F.3d at 1082; Villarreal, 613 F.3d at 1355.  Petitioner has not

demonstrated that no reasonable state court could have concluded that,

notwithstanding oppressive pretrial incarceration, the prejudice factor weighed

against Petitioner in the absence of any showing that the defense was impaired or that

Petitioner suffered undue anxiety/concern.  Cf. United States v. Swinton, 18-101,

2019 WL 7050127, at *3 (2d Cir. Dec. 23, 2019) (holding that, although prisoner

experienced oppressive pretrial incarceration and anxiety, he failed to show that his

defense was meaningfully impaired, that prejudice weighed only slightly in his favor,

18

and that in considering all the factors his right to a speedy trial was not violated). Ground one fails.

### B.    Ground Two

#### 1.    Background

Petitioner sought to suppress evidence on the grounds that "the affidavit did not contain facts to establish that 'the Taylor residence' was located at 1751 Bergen Court, and that, without this information, the magistrate had no basis upon which to conclude that evidence of the crimes could be found at that address and thus did not have probable cause to issue a warrant for the search of 1751 Bergen Court." Taylor, 303 Ga. at 59, 810 S.E.2d at 115.  At the trial level, Petitioner thoroughly litigated his Fourth Amendment challenge to the search of his home, 1751 Bergen Court. [See Doc. 6-1 at 171-73, 203-09; Doc. 6-9 (transcript of hearing and copies of exhibits)].

On direct appeal, Petitioner argued that the trial court erred by denying his motion to suppress when the affidavit submitted with the application for a search warrant of Petitioner's home failed to establish that Petitioner resided at the address to be searched.  See Taylor, 338 Ga. App. at 813, 792 S.E.2d at 109.  The Georgia Court of Appeals found as follows –

19

In our view, the trial court correctly concluded "that a sufficient nexus, or connection, between the items sought and the place to be searched, existed so as to support a conclusion of probable cause for issuance of the search warrant for the residence." As the trial court explained:

> The supporting affidavit and application for search warrant here are combined into one document, and specific facts, as provided by victim's statements, connecting this Defendant to the crimes of Child Molestation, and/or Sexual Battery committed at Defendant's residence are detailed in "Attachment A," expressly incorporated into the affidavit and application by reference. The affiant avers in "Attachment A" that, based on the recited facts, probable cause exists to "believe that a crime has been committed and that there may be evidence to support such crimes at *said location*."

> Page 2 of the affidavit and application provides that "the facts establishing probable cause in searching for and seizing the foregoing specifically described person(s), property, items, articles, instruments connected with the foregoing crime(s) at the location described herein are: SEE ATTACHMENT 'A.' "

> This express language is immediately followed by the physical address and description of the location.

(Emphasis supplied.)

Taylor, 338 Ga. App. at 813-14, 792 S.E.2d at 109-10.  The Georgia Court of Appeals

then reviewed case law and was persuaded that –

> when the affidavit describes only one place connected to the suspect, such as a residence, and lists a specific address to be searched, a connection between the address described where evidence can be found

and the probable cause outlined in the affidavit "is the only logical conclusion supported by a common-sense reading of the affidavit."

Taylor, 338 Ga. App. at 813-15, 792 S.E.2d at 109-10 (quoting State v. Trujillo, 150 N.M. 721, 726, 266 P.3d 1 (2011)).

Petitioner sought further review, and the Georgia Supreme Court held as follows –

We granted certiorari in this case to consider whether an affidavit executed in support of an application for a search warrant that does not specifically say that the residence to be searched is the residence of the suspect may nevertheless be sufficient to establish that connection based on inferences that can be drawn from the affidavit and thus be sufficient to establish a nexus between the evidence to be seized and the place to the searched. . . . We conclude that an affidavit may be sufficient to connect the suspect to the residence based on inferences that can be drawn from the affidavit. Here, the affidavit was sufficient to establish that connection, and, accordingly, we affirm the judgment of the Court of Appeals.

. . .

To begin, the affidavit and attachment in this case were sworn to on the same day by the same detective before the issuing judge, and the affidavit incorporates the attachment by specific reference. Turning to the affidavit and attachment, it is clear that the attachment, which described numerous sexual assaults as occurring at [Petitioner's] home, firmly established a nexus between the evidence sought and his residence. The alleged deficiency in the affidavit and attachment is the failure to expressly link [Petitioner's] residence to 1751 Bergen Court, the address that the affidavit listed as the place to be searched. We conclude, however, that, given all the circumstances, the magistrate

21

could easily have inferred a connection between [Petitioner] and the residence at 1751 Bergen Court. The affidavit says that the evidence sought is "located at the particular place to be searched"; is "at the location described herein"; and is at the "geographic location" that is "more particularly described" as the residence located at 1751 Bergen Court. There is no location other than Bergen Court described in the affidavit or attachment as a place where evidence of the crimes can be found. The affidavit also says that the "facts establishing probable cause" for searching for evidence of those crimes were set forth in "Attachment 'A.'" Attachment "A" then describes crimes of child molestation and sexual battery as occurring at "[Petitioner's] residence" or some specific place at [Petitioner's] residence. The attachment concludes by saying that "there is probable cause to believe that a crime has been committed and there may be evidence to support such crimes at said location" and by "pray[ing] that the search warrant be granted so that the crime scene might be processed, photographed, and evidence of the crime documented and seized."

As can be seen, the affidavit says three times that evidence of the alleged crimes may be discovered at the "location" described in the affidavit. Thus, when the attachment says that evidence of the alleged crimes may be found at "said location," which was particularly described as 1751 Bergen Court, and describes [Petitioner's] house as the crime scene, we think that the magistrate could have reasonably inferred the "crime scene" was 1751 Bergen Court. And, as the crime scene was clearly [Petitioner's] residence, the magistrate also could have reasonably inferred a nexus between [Petitioner] and evidence connected with the crimes and 1751 Bergen Court. Stated somewhat differently, we conclude that the magistrate, making a practical and common-sense decision, was entitled to infer that there was a "fair probability" that [Petitioner] lived at 1751 Bergen Court and that items listed in the search warrant would be found there. Given the substantial deference we owe to the magistrate's probable cause decision, we conclude that the magistrate was authorized to determine that probable cause existed for the issuance of the search warrant.

22

Taylor, 303 Ga. at 57-58, 61-62, 810 S.E.2d at 114-17 (2018).

### 2.   **Parties' Arguments**

In his second ground, Petitioner asserts that "the search warrant affidavit does not make an express connection between the evidence sought and the address of the place to be searched, which is a fatal defect and the magistrate cannot infer that such a connection exists[,] violating the United States Constitution Fourth Amendment." [Doc. 1 at 11-12].  Respondent argues that Stone v. Powell, 428 U.S. 465 (1976), precludes review of Petitioner's ground two, Fourth Amendment claim.  [Doc. 5-1 at 7-9].  Petitioner replies that review is no longer governed by Stone but is governed by the AEDPA.  [Doc. 9 at 12-13].

### 3.   **Law and Recommendation**

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Stone, 428 U.S. at 482 (quoting the Fourth Amendment).  This right, however, is not the equivalent of a constitutional right that

evidence obtained as the result of an illegal seizure be excluded from trial.  The rule allowing the suppression or exclusion of material obtained in violation of the Fourth Amendment is justified as a means to deter unconstitutional police conduct and is "not a personal constitutional right."  Id. at 486.  "The force of this justification becomes minimal where federal habeas corpus relief is sought by a prisoner who previously has been afforded the opportunity for full and fair consideration of his search-and-seizure claim at trial and on direct review."  Id.  Thus, a federal court cannot grant relief on a Fourth Amendment claim brought by a habeas corpus petitioner attacking his state court conviction if the petitioner has had an opportunity for full and fair litigation of that claim in the state trial and appellate courts.  Id. at 494-95.  "For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court."  Mincey v. Head, 206 F.3d 1106, 1126 (11th Cir. 2000) (quoting Tukes v. Dugger, 911 F.2d 508, 513-14 (11th Cir. 1990)).  The Stone bar applies without inquiring into the correctness of the state court's decision on the Fourth Amendment claim.  Swicegood v. Alabama, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

24

As indicated by the Eleventh Circuit Court of Appeals in 2000, the Stone doctrine endures post AEDPA. Bradley v. Nagle, 212 F.3d 559, 565 (11th Cir. 2000) (stating, "[w]e cannot now say that Bradley was denied a full and fair opportunity to litigate his Fourth Amendment claims, even were we to disagree with the state courts' analysis or conclusion. To do so would vitiate the Supreme Court's decision in Stone, which we are not empowered to do").

Here, Petitioner's Fourth Amendment claim has been duly considered and decided at the trial level, by the Georgia Court of Appeals, and the Georgia Supreme Court. See Mincey, 206 F.3d at 1126. Any further consideration in this Court is barred by the Stone doctrine. Accordingly, Petitioner's ground two fails.

## IV.    Certificate of Appealability ("COA")

Under Rule 11 of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant "must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." <u>Melton v. Sec'y, Fla. Dep't of Corr.</u>, 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).

The undersigned recommends that a COA should be denied because it is not reasonably debatable that Petitioner has failed to meet his burden under AEDPA. If the Court adopts this recommendation and denies a COA, Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts.

## V.    **Conclusion**

For the reasons stated above,

It is **RECOMMENDED** that the instant petition for a writ of habeas corpus [Doc. 1] and a COA be **DENIED** and that the instant action be **DISMISSED**.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 21st day of April, 2020.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE

26